**LCS SERVICES, INC., Chambers of West Virginia, Inc., and Chambers Development Company, Inc., Plaintiffs,**

**v.**

**The Honorable Gaston CAPERTON, Governor of the State of West Virginia, The Honorable Laidley Eli McCoy, Director, Division of the Environmental Protection of West Virginia, The Honorable B.F. "Cap" Smith, Chief of the Office of Waste Management for the Division of the Environmental Protection, The Pub-lic Service Commission of the State of West Virginia, The Honorable James H. Paige, Secretary, Department of Tax and Revenue of the State of West Virginia, and The Berkeley County Solid Waste Authority, Defendants.**

**Civil Action No. 3:96–CV–31.**

United States District Court, N.D. West Virginia, Martinsburg Division.

March 3, 1997.

---

Bruce L. Thall, Spector, Gadon & Rosen, Philadelphia, PA, Michael R. Bucci, Cathy M. Armstrong, Thorp, Reed & Armstrong, Pittsburgh, PA, for plaintiffs.

William E. Adams, Nitro, WV, Silas B. Taylor, Armando R. Benincasa, Mark J. Rudolph, Charleston, WV, for defendants.

## MEMORANDUM OPINION AND ORDER

BROADWATER, District Judge.

On the 3rd day of January, 1997, the above styled declaratory judgment action came before the Court for a hearing on plaintiffs' Motion for Preliminary Injunction. The plaintiffs appeared by their counsel of record, Cathy M. Armstrong, Esquire, and Bruce L. Thall, Esquire. The defendants the Hon. Gaston Caperton, the Hon. Laidley E. McCoy, and the Hon. B.F. "Cap" Smith, appeared by their counsel of record, William E. Adams, Esquire. The defendants the Hon. Otis Casto, the Hon. Boyce Griffith, and the Hon. Richard Frum appeared by their counsel of record, Thornton Cooper, Esquire. The defendants the Hon. James H. Paige, and the Berkeley County Solid Waste Authority, also appeared by their counsel of record, Silas B. Taylor, Deputy Attorney General.

This Court has now considered the plaintiffs' Motion for Preliminary Injunction, the memoranda filed in support thereof and in opposition thereto, the pleadings filed and the applicable case law. For reasons set forth below, the Court finds that the plaintiffs' Motion for Preliminary Injunction should be denied.

### Statement of the Issues

The issue to be determined is whether this Court should issue a preliminary injunction against the defendants in this case based upon the Orders entered in *Valero Terrestrial Corporation, et al. v. The Honorable Eli McCoy, et al.*, Civil Action No. 5:93–CV–189 (*"Valero Terrestrial"*), by the Honorable Frederick P. Stamp, Jr., on September 28, 1995 and December 14, 1995, preliminarily enjoining the enforcement of state statutes at issue.

### Statement of the Facts

The plaintiffs, LCS Services, Inc., Chambers of West Virginia, Inc., and Chambers Development Company, Inc., filed this declaratory judgment action on May 1, 1996, pursuant to 28 U.S.C. § 2201, *et seq.*, 28 U.S.C. § 1343, and 28 U.S.C. § 1367. The Complaint requests that the Court issue a judgment declaring certain sections of West Virginia statutes and actions taken based upon those statutes as unconstitutional and as violative of the Due Process Clause of the Fifth Amendment of the United States Constitution, the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, and 42 U.S.C. § 1983.

The plaintiff LCS Services, Inc. ("LCS") is a West Virginia corporation which owns a sanitary landfill known as 'LCS' located near Hedgesville, Berkeley County, West Virginia. LCS' landfill operates under Solid Waste Facility Permit 1020 granted by the West Virgi-

nia Water Resources Board[1]. The plaintiff Chambers of West Virginia, Inc. ("Chambers of W. Va.") is also a West Virginia corporation which owns all of the stock in LCS.[2] The plaintiff Chambers Development Company, Inc. ("Chambers Development") is a Delaware corporation wholly owning Chambers of W. Va. Chambers Development provides integrated solid waste disposal services. Chambers Development is engaged in interstate commerce as it owns and/or operates facilities which collect, transport, recycle, dispose of non-hazardous solid wastes among and between states, and haul such wastes for reuse, recycling, or disposal.

The defendant the Honorable Gaston Caperton ("Governor Caperton") is the former Governor of the State of West Virginia. He is being sued in his official capacity as the Chief Executive Officer of the State of West Virginia.

The defendant, the Honorable Laidley Eli McCoy ("Director McCoy") is the Director of the Division of Environmental Protection ("DEP") of West Virginia. Director McCoy is also being sued in his official capacity as the individual empowered by the West Virginia Code to carry out the duties and responsibilities of environmental acts of the State, including the West Virginia Solid Waste Management Act. The defendant, the Honorable B.F. "Cap" Smith ("Chief Smith"), is sued in his official capacity as the Chief of the DEP's Office of Solid Waste Management.

The defendant the Honorable James H. Paige ("Secretary Paige") is the former appointed Secretary of the Department of Tax and Revenue and Tax Commissioner of the State of West Virginia. He is sued in his official capacity as being charged with the implementation and enforcement of those various provisions of the acts plaintiffs have challenges pertaining to imposing and collecting solid waste assessment fees.

Defendant Berkeley County Solid Waste Authority is a solid waste authority statutorily created with the capacity to sue and be sued[3]. The Berkeley County Solid Waste Authority has jurisdiction over where LCS is located. The plaintiffs allege that this Authority has unconstitutionally impeded, competed, and imposed a fee of $.50 per ton[4] on the disposal of solid wastes at LCS.

The Complaint for Declaratory Relief was amended on November 19, 1996[5] to reflect the substitution of the following Commissioners of the Public Service Commission of the State of West Virginia ("PSC"), the Hon. Otis Casto, the Hon. Boyce Griffith, and the Hon. Richard From ("the PSC Commissioners") as party defendants in place of the PSC entity originally named as a defendant.

LCS, Chambers of W. Va., and Chambers Development are seeking injunctive relief based on the Orders entered by the Honorable Frederick P. Stamp, Jr., United States District Judge, in *Valero Terrestrial*, of September 28, 1995 and December 14, 1995[6] granting the plaintiffs' motion for preliminary injunction therein on the basis that the West Virginia statutory provisions at issue are unconstitutional under the Commerce Clause of the United States Constitution.[7] In the December 14, 1995 Order, this Court held:

> Pursuant to the case law, this Court hereby clarifies that its finding that the statutes challenged by the preliminary injunction were unconstitutional for the purposes of determining irreparable harm to the plaintiffs under an analysis of the *Blackwelder*[8] factors should not be interpreted to be a final determination of the constitutionality of the statutes. Further,

1. *See* Complaint for Declaratory Relief, Page 29.

2. Chambers of W. Va. acquired all of LCS' stock on December 31, 1989.

3. W. Va.Code § 22C–4–23(1).

4. *See* Complaint for Declaratory Relief, Page 6.

5. *See* Order of November 19, 1996, entered in this civil action.

6. *Valero Terrestrial Corp., et al. v. The Honorable Laidley Eli McCoy*, Civil Action No. 5:93–CV–189 (N.D.W.V.1993).

7. September 28, 1995 Order, Page 3.

8. *Blackwelder Furniture Company of Statesville, Inc. v. Seilig Manufacturing Company, Inc.*, 550 F.2d 189 (1977)(footnote added).

this Court hereby clarifies that only those statutes specifically enumerated in the preliminary injunction motion are those which are enjoined from being enforced. Specifically, these code sections are:

(1) W.Va.Code § 20–5F–2b(e), enacted by Senate Bill No. 288 (April 1983), repealed and substantially reenacted at W. Va.Code § 22–15–20(e), providing that all sewage sludge is subject to the same tipping and other fees imposed upon solid waste and including sewage sludge in the total tonnage of a solid waste facility.

(2) W. Va.Code § 20–5F–1(c), enacted by Senate Bill No. 18 (October 1991), repealed and substantially reenacted at W. Va.Code § 22–15–1(c), providing that "[t]he Legislature ... finds that disposal in West Virginia of solid waste from unknown origins threatens the environment and the public health, safety and welfare, and therefore, it is in the interest of the public to identify the type, amount and origin of solid waste accepted for disposal at West Virginia solid waste facilities."

(3) W. Va.Code § 20–5F–4(c), enacted by Senate Bill No. 18 (October 1991), repealed and substantially reenacted at W. Va.Code § 22–15–8, providing for tonnage caps on the amount of solid waste that can be hauled at solid waste facility per month.

(4) W. Va.Code § 20–9–2(c), enacted by Senate Bill No. 18 (October 1991), repealed and substantially reenacted at § 22C–4–2(d), providing the definition for a "Class A facility."

(5) W. Va.Code § 20–9–2(d), enacted by Senate Bill No. 18 (October 1991), repealed and substantially reenacted at § 22C–4–2(e), providing the definition for a "Class B Facility."

(6) W. Va.Code § 20–5F–5(f), enacted by Senate Bill No. 18 (October 1991), repealed and substantially reenacted at W. Va.Code § 22–15–10(f), providing that a commercial solid waste facility shall first ensure that the disposal needs of the county or region where it is located are met.[9]

Each of the parties maintain pertinent factual assertions relevant to their respective positions on plaintiff's motion for a preliminary injunction. Such were the subject of the January 3, 1997 hearing.

LCS asserts that it suffers irreparable injury as Judge Stamp has determined that these aforementioned West Virginia statutes are unconstitutional and the defendants herein should be barred from enforcement of these statutes. LCS states that it has not been cited for a violation of any of the enumerated code provisions by any of the encaptioned defendants. Further, LCS represents that it is currently hauling under the sewage sludge tonnage caps and limits in question due to a decrease in market demand.

Governor Caperton, Director McCoy, and Chief Smith of the DEP ("the Environmental defendants"), respond that in a letter dated May 17, 1996 [10], "(b)ecause of Judge Stamp's injunction, the DEP is not enforcing the tonnage caps related to the classification system, or the requirement that a commercial solid waste facility shall first ensure that the disposal needs of the county or region where it is located are met." The Environmental defendants also recite that the scope of the preliminary injunction in *Valero Terrestrial* would apply to LCS and to those other similarly situated parties. Counsel for the Environmental defendants also sets forth that the parties herein are dissimilar to those enjoined in *Valero Terrestrial* as they were not named as party defendants in the previous litigation. Therefore, the environmental defendants assert that the request for enjoinment under the Court's prior Orders to the instant case is unwarranted.

The PSC Commissioners also take the position that the preliminary injunction Orders apply only to *Valero Terrestrial* named parties. The PSC Commissioners challenge that its decisions relating to solid waste carriers are not affected by the preliminary injunction Orders as the PSC has jurisdiction and is authorized under W. Va.Code §§ 24–2–1, 24–2–11, and 24–2–7 to regulate

---

9. *See* Memorandum of Opinion and Order of December 14, 1995, pp. 9–10.

10. *See* Plaintiff's Memorandum of Law in Support of their Motion for Preliminary Injunction, Exhibit "I."

public utilities, to issue certificates of public convenience and necessity, and to maintain reasonable regulations as to common carriers. Under W. Va.Code § 24–2–1c, LCS, as an applicant, would have the burden of showing need to the PSC for such certification. If the PSC denied certification under this chapter, the PSC Commissioners opine that LCS would have to allege that the administrative statutes were not enforced evenhandedly. These defendants state that the Orders of *Valero Terrestrial* are limited to those enumerated statutory provisions and do not encompass the administrative statutes of the West Virginia Code which govern the PSC and its commissioners. Therefore, application of the *Valero Terrestrial* preliminary injunction Orders cannot be expanded to limit the authorities of the PSC. Further, the PSC Commissioners contend that they, too, do not enforce those provisions addressed by the preliminary injunction Orders and will not as long as they remain in effect.

Finally, the Berkeley County Solid Waste Authority and Secretary Paige of the West Virginia Department of Tax and Revenue also object to the application of the preliminary injunction Orders of *Valero Terrestrial* to the instant case. These defendants contend that the plaintiffs in the *Valero Terrestrial* action were subject to losing a $28 million performance bond which sufficed as their irreparable injury to withstand scrutiny under preliminary injunction standards. Additionally, these defendants contend that *Valero Terrestrial* is distinguishable from the case at hand as the *Valero Terrestrial* case centered on the issue of sewage sludge, whereas LCS is currently disputing tonnage caps. Further, defendants allege that there is no evidence offered to suggest that LCS is now similarly situated to those plaintiffs in *Valero Terrestrial.*

Counsel for the Berkeley County Waste Authority and Secretary Paige stated that LCS cannot meet the irreparable injury standard necessary to warrant the preliminary injunction. Counsel argued [11] that LCS is

seeking to enjoin tonnage caps which have been imposed on the LCS landfill for over six years. Counsel points out that the tonnage cap was litigated in state circuit court and conceded on appeal before the West Virginia Supreme Court of Appeals in *State ex rel. Hamrick v. LCS Services, Inc.,* 193 W.Va. 111, 454 S.E.2d 405 (1994). Therefore, these defendants submit that LCS is barred by *res judicata* and applicable statutes of limitation from seeking relief coextensive with the relief granted in the *Valero Terrestrial* litigation.

### *Discussion of Law*

■ In the Fourth Circuit, before a grant of a preliminary injunction is decreed, the party requesting such must overcome the four factors of the balance-of-the-hardship test enumerated in *Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Mfg. Co., Inc.,* 550 F.2d 189 (4th Cir.1977). These factors are: (1) a clear showing of irreparable harm to the moving party if the preliminary injunction is not granted, (2) the likelihood of harm to the defendant if the preliminary injunction is granted, (3) the likelihood that the moving party will succeed on the merits of the litigation, and (4) the public interest. *Id.* at 195–96; *see also Gilliam v. Foster,* 61 F.3d 1070 (4th Cir.1995); *Multi–Channel TV Cable Company v. Charlottesville Quality Cable Operating Co.,* 22 F.3d 546 (4th Cir.1994); *Direx Israel, Ltd. v. Breakthrough Medical Corp.,* 952 F.2d 802 (4th Cir.1991).

In the September 28, 1995 Order of *Valero Terrestrial,* Judge Stamp held that under the factors enumerated in *Blackwelder* [12], the plaintiffs therein were entitled to a preliminary injunction enjoining the State of West Virginia from enforcing those aforementioned statutory provisions as likely unconstitutional, not yet rendering a decision on the final determination of constitutionality.

■ The impact of Judge Stamp's Order is clear. The preliminary injunction issued by Judge Stamp is enforceable against all defen-

---

11. *See* Berkeley County Solid Waste Authority's Memorandum in Support of Response to Plaintiff's Motion for Preliminary Injunction, Page 1–2.

12. *Id.* For a detailed discussion of the *Blackwelder* factors as applied to the *Valero Terrestrial* litigation, see Memorandum Opinion and Order of September 28, 1995, pp. 7–10, 17–19.

dants similarly situated who attempt to enforce those provisions of the West Virginia Code which have been held preliminarily unconstitutional. Neither of the preliminary injunction Orders of *Valero Terrestrial* restrict application to the named defendants nor state that the grant of the preliminary injunction is limited to the facts of the case.

The impact of the preliminary injunction Orders comes into sharper focus upon review of the Fourth Circuit's recent decision in *Environmental Technology Council v. Sierra Club*, 98 F.3d 774 (4th Cir.1996). The issues presented on appeal before the court were "South Carolina's attempt(s) to limit the amount of hazardous waste generated out-of-state and buried within [the state] by promulgating a series of" laws which discriminately burdens out-of-state waste. *Environmental Technology Council v. Sierra Club*, 98 F.3d 774, 778 (4th Cir.1996)("*Environmental Tech.*"). The *Environmental Tech.* issues and application for injunctive relief are analogous to those of *Valero Terrestrial*. Both cases involve whether state statutes discriminate and are unconstitutional as burdensome to out-of-state parties under the Commerce Clause of the United States Constitution and dormant Commerce Clause analysis.

Ultimately, the district court in *Environmental Tech.* granted summary judgment in favor of the plaintiff and issued a permanent injunction as to all the challenged statutory provisions. *Id.* On appeal, finding no abuse of discretion and proper analysis of the applicable standards, the Fourth Circuit affirmed the district court's ruling. *Id.* at 789. This decision clearly indicates the prudence of Judge Stamp's preliminary injunction Orders in *Valero Terrestrial* and for which this Court declines to disturb.

This Court finds that the preliminary injunction encompasses all defendants similarly situated for those reasons outlined above. Consequently, those enumerated provisions of the West Virginia Code are unenforceable as preliminarily unconstitutional subject to a final decision rendered herein.

■ Although the Fourth Circuit recognizes that irreparable harm occurs when an individual is denied a constitutional right[13],

this Court also finds that the plaintiffs have failed to make a clear showing of irreparable injury as warranted under a *Blackwelder* analysis. Unlike plaintiffs' scenario in *Valero Terrestrial*, the LCS plaintiffs are not in jeopardy of losing millions of dollars in performance bonds. Further, the defendants in the instant case have each stated on the record that the statutes of which LCS complains are not being enforced until final resolution of the *Valero Terrestrial* litigation. Should the defendants herein attempt to enforce those statutes in question, the LCS plaintiffs may then seek relief under the *Valero Terrestrial* preliminary injunction orders. Such relief would be permitted before either this Court or Judge Stamp. Accordingly, the Court concludes that the plaintiffs have not met the applicable standards for preliminary injunction by the facts presented herein at this time.

The Court does hereby

**ORDER**

1. That the plaintiff's Motion for Preliminary Injunction is **DENIED.**

2. That a Scheduling Conference is set for **Tuesday, March 18, 1997, at 10:30 a.m., in Martinsburg, West Virginia.**

3. That the Clerk of Court transmit copies of this order to counsel of record herein.

---

**13.** *Henry v. Greenville Airport Comm'n* 284 F.2d 631, 633 (4th Cir.1960).